# FOR PUBLICATION

FILED & ENTERED

OCT 05 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fisherl     DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Shawn Sharon Melamed<br>Jenous Tootian<br><br><div align="right">Debtor(s).</div> | CHAPTER 7<br><br>Case No.:  1:20-bk-10069-MT<br>Adv No:   1:20-ap-01068-MT |
| AMY L GOLDMAN<br><br><div align="right">Plaintiff(s),</div><br>   v.<br><br>Shawn Dardashti,<br><br><div align="right">Defendant(s).</div> | **MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><br>Date:       June 30, 2021; Sept. 1, 2021<br>Time:       1:00 p.m.<br>Courtroom:   302 (via ZoomGov) |

This is a motion for summary judgment in a complicated fraudulent transfer action brought by the Chapter 7 Trustee Amy Goldman (the "Trustee") in the case of Shawn Melamed and Jenous Tootian, bankruptcy case no. 1:20-bk-10069-MT. Sometime in 2004, Debtors Shawn Sharon Melamed and Jenous Tootian (collectively, "Debtors," individually as "Debtor Melamed" and "Debtor Tootian") purchased real

property at 4360 Estrondo Pl., Encino CA 91436 (the "Property"). *Complaint for Avoidance and Recovery of Fraudulent Transfers* (the "Complaint"), ¶ 8. Trustee alleges that in the years following the purchase, Debtors incurred substantial debts and by 2012, the Property was encumbered by five liens. Id., 2:20-23. In October 2009, Steward Financial, holder of the first position deed of trust, gave notice of a trustee's sale. Trustee contends that Debtors formed a scheme to protect their equity in the Property from their creditors. Id., 2:21-3:1. Trustee alleges that it was then that Shawn Dardashti ("Defendant") made the first offer to purchase the Property for $1.5 million. This offer was allegedly communicated to Steward Financial by Debtor Melamed's agent with the request that the foreclosure be postponed. Id., 3:18-19. While the sale did not happen, the foreclosure was apparently canceled or postponed. Id. Trustee alleges that it became routine that, whenever the Property was threatened by foreclosure, Defendant would make a low offer on the Property to Debtor Melamed in order to postpone foreclosure. Id., 3:10-4:3. Defendant again made an offer on the Property in February 2012, for $1.1 million, which was accepted by Debtors (the "February 2012 Offer"). Id., 3:22-24. The February 2012 Offer named the listing agent as "Wealth Road Realty," which Trustee alleges is a d.b.a. of Rebeka Shadpour ("Shadpour"). Id., 4:1-3. The February 2012 Offer did not result in a completed sale. Id.

On or about March 2012, Farahnaz Khoshnood ("Khoshnood"), whom Trustee alleges is Debtor Shawn Sharon Melamed's aunt, purchased a deed of trust in favor of Trilfish LLC that secured the third-position lien. Id. at 2:24-16. Trustee alleges that Khoshnood was merely a "straw owner," in an arrangement where she was holding title for the benefit of Debtors. Id., 3:3-8.

After Khoshnood foreclosed on the Property in August 2012, the fourth and fifth position liens in favor of Mazakoda, Inc. and Elyas Babadjouni were "wiped out." Id., 2:27-28. Thereafter, in November 2012, Khoshnood and Debtor signed a listing agreement with Wealth Road Realty and Shadpour to list the Property at $1.15 million. Id., 4:4-6. Defendant offered $990,000 to Debtor Melamed, which was rejected by the lender as a short sale because the offer was too low. Id., 4:7-16.

On or about May 7, 2014, Select Portfolio Servicing, Inc. ("SPS") sent a letter to Debtor Melamed approving a short sale of the Property at $1.15 million, on certain conditions. Id., 4:28-5:1-19. (the "SPS Agreement"). Trustee alleges that, at the time Defendant and Debtor Melamed entered into these agreements, the Property was worth substantially more than the $1.15 million sale price proposed to SPS, and that Defendant and Debtor Melamed stood to sequester substantial amounts of equity in the Property from Debtors' creditors by short-selling the Property to Defendant. Id., 7:7-12. Trustee alleges that Defendant, would buy the Property in a short sale for much less than it was worth. In exchange, he would pay kickbacks to Debtors and their listing agent, give an option to Debtors (through a proxy) to repurchase the Property once the storm had passed, would sign a sham lease with the proxy to conceal Debtors' continued presence at the Property, and would generally go along with the scheme, while receiving rental income from Debtors. Id., 4:20-27.

To effectuate the short sale, the following transactions, among others, were completed:

a. On or about May 30, 2014, Farahnaz Khoshnood and her husband, Roben Yomtobian, executed a grant deed transferring the Property to Debtor Melamed. The grant deed provided that the transfer was "A BONAFIDE GIFT GRANTOR HAS RECEIVED NO CONSIDERATION R&T 11911[.]" Id., Ex. 8.

b. On or about June 6, 2014, Debtor Tootian executed an interspousal transfer grant deed conveying all of her interest in the Property to Debtor

Melamed. This deed likewise provided that the property was "Bonafide gift, received nothing in return R+T 11911[.]" Id., Ex. 9.

c. Also on or about June 6, 2014, Debtor Melamed executed a grant deed conveying his interest in the Property to Defendant Shawn Dardashti. The deed provided that the documentary transfer tax was "NOT OF PUBLIC RECORD" but "computed on full value of property conveyed[.]" Id., Ex.10.

Trustee alleges that after the "sale" to Defendant was complete, a number of other transfers were made out of escrow as sham "Settlement Charges" to entities controlled by Debtors' and Khoshnood's families, and to entities controlled by Shadpour and her family. Id., 9:20-10:26. Trustee alleges that these sham "Settlement Charges" were a way for the parties to obtain money from the short sale over and above the monetary limits provided for in the SPS Agreement. Id.

On or about June 11, 2014, Trustee alleges that Defendant entered into an Option Agreement with Edwin Safaeipour, on behalf of Estrondo Place, LLC, whereby Defendant, in exchange for $50,000, granted Estrondo Place, LLC an option to repurchase the Property for $1.4 million. Id., Ex. 6. Trustee alleges that Edwin Safaeipour is the brother of Rozita Safaeipour, a.k.a. Rozita Melamed, who is married to Debtor Shawn Sharon Melamed's brother, Edmond Melamed. In other words, Safaeipour is Shawn Sharon Melamed's brother's brother-in-law ("Safaeipour"). Id., 7:22-25. Trustee alleges that Safaeipour was a full-time student and did not have the financial ability to pay either the $50,000 for the option or the contemplated $1.4 million for the Property. Id., 7:25-28. Trustee contends that this arrangement was a back-door method for Debtors to reacquire the Property should they so desire, using their family member, Safaeipour, as a straw buyer. Id., 7:28-8:2.

Also on June 11, 2014, Defendant and Estrondo Place, LLC (by Safaeipour) entered into a Lease Agreement whereby Estrondo Place, LLC would lease the

Property for $10,825 per month. Id., Ex. 7. Trustee maintains that this was a sham, as Safaeipour was a full-time student, and never had any intention or ability to pay $10,825 per month to occupy the Property, and never did pay any rent to Defendant. Id., at 8:6-9. The Lease Agreement was to conceal Debtors' continued occupancy of the Property and payment of rent to Defendant. Id., 9-12. Trustee maintains that at all relevant times and to this day, Debtor Melamed pays rent directly Defendant. Id.

On May 25, 2018, creditor Mazakoda, Inc. filed a lawsuit against Debtors and Defendant, as well as Khoshnood and her spouse Roben Yomtobian, and Defendant's wife Sara Dardashti, for fraudulent transfer under Cal. Civ. Code §§ 3439.04 and 3439.05 and conspiracy, among other claims. Defendant demurred to the complaint, but Trustee contends that his demurrer was overruled in its entirety on October 18, 2018. The state court case remains pending, although stayed, in the Los Angeles County Superior Court, entitled Mazakoda, Inc. v. Shawn Sharon Melamed et al., Case No. BC707954. 41. As discovery progressed, Trustee alleges that the above facts and others came to light, and Defendant's and Debtors' depositions were set for the week of January 13, 2020.

On Friday, January 10, 2020, before their depositions could be taken, Debtors initiated this bankruptcy proceeding and filed a notice of bankruptcy stay as to all parties. On July 8, 2020, Trustee filed this Complaint, seeking to set aside as a fraudulent transfer the June 6, 2014 transfer of the Property from Debtor Melamed to Defendant under 11 U.S.C. § 544 and the Uniform Fraudulent Transfer Act, adopted by California as Civil Code § 3439 et seq. (the "UFTA").

Defendant has now filed a Motion for Summary Judgment which is opposed.

**Summary Judgment**

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c) (incorporated by FRBP 7056).

Defendant, as the moving party, has the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. Id. at 324. The court must view the evidence in the light most favorable to the nonmoving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir.1982). The nonmoving party must show more than "the mere existence of some alleged factual dispute ... the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of N. Am., 638 F.2d 136, 140 (9th Cir.1981).

This is a less common type of summary judgment motion brought by the party who does not have the burden of proof at trial. The moving party has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. See Celotex, 477 U.S. 317, 325. The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." Id. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the

material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

Federal Rule of Civil Procedure 56(d) provides that if a party opposing summary judgment demonstrates inability "for reasons stated [to] present by affidavit facts essential to justify the party's opposition," the court may deny the motion for summary judgment or continue the hearing to allow additional discovery, or "make such other order as is just."  When considering a request for further discovery by a party opposing summary judgment under Fed. R. Civ. P. 56(d), the burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists and that it would prevent summary judgment. <u>Qualls v. Blue Cross of California, Inc.</u>, 22 F.3d 839, 844 (9th Cir. 1994); <u>see also</u> <u>Celotex v. Catrett</u>, 477 U.S. 317, 326 (1986).

The first amended complaint alleges four causes of action, the first three under 11 U.S.C. § 544(b), the fourth under 11 U.S.C. § 550. It then lists a resulting trust and a constructive trust in its prayer for relief.

**Fraudulent Transfer Causes of Action**

Trustee alleges causes of action under 11 U.S.C. § 544(b)(1), incorporating by reference Cal. Civ. Code §§ 3439.01 et seq. Section 544(b) of the Bankruptcy Code allows the trustee to step into the shoes of a creditor who could, as of the date of the bankruptcy petition, avoid the transfer under state law. <u>See In re Acequia, Inc.</u>, 34 F.3d 800, 807 (9th Cir.1994)(a trustee's § 544(b) power is dependent on whether a creditor

existed at the time the transfers were made that still had a viable claim against the debtor at the time the debtor filed bankruptcy).

The causes of action under Cal. Civ. Code § 3439.04 include an allegation in the first cause of action for actual fraud under (a)(1) and, in the second cause of action, for constructive fraud under (a)(2).

*Requirements of Cal. Civ. Code § 3439.01.*

In order for a fraudulent transfer to occur, among other things, there must be a "transfer" of an "asset" as defined in the Uniform Fraudulent Transfer Act (UFTA), Civ. Code, § 3439 *et seq.*, Civ. Code, § 3439.04. In the definitional section of the UFTA, a "transfer" is defined as every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. Civ. Code, § 3439.01, subd. (i). "Asset" means property of a debtor, but the term does not include the following: (1) Property to the extent it is encumbered by a valid lien; and (2) Property to the extent it is generally exempt under nonbankruptcy law. Ca. Civ. Code, § 3439.01, subd. (a)(1) & (2).

An earlier appraisal by Defendant found the house to be worth $1,150,000. Plaintiff alleges that the house was worth $2,150,000 at the time of the short sale. For the purposes of this motion only, Defendant has assumed the Property to have been worth $2,150.000. Neither side has submitted an appraisal of the property at the time of transfer. Counsel also subsequently submitted a summary from SPS summarizing their valuation of the property at the time of the short sale indicating the advantages of a short sale. An officer of SPS' uncontradicted testimony is that the amount owed on just the first position deed of trust was $2,494,554.39

Trustee objected to the declaration of Defendant's attorney which seeks to authenticate the documents establishing the encumbrances on the property. Defendant's attorney attaches the notice of state tax lien, the notice of trustee sale of the property and a letter from Chase Bank to the debtor. Trustee is correct that counsel is not the correct custodian of these records, but Trustee appears to concede that the documents appear to be authentic.  Any evidentiary problem with their authentication is also irrelevant where the evidence is overwhelming that the First Trust Deed holder's lien surpassed the value of the property before the short sale was commenced, making the junior liens irrelevant for this analysis.

More importantly, Defendant has submitted credible evidence to put Trustee to the test to show the extent of the liens on the property as Trustee has the burden of proof at trial. Celotex Corp., 477 U.S. at 325. Given the burden on Trustee to prove the value of the liens she alleges and the contrary evidence submitted by Defendant, the evidentiary objection is overruled.

Here, there is no dispute between the parties that a "transfer" of the Property, as defined by Civ. Code § 3439.01(m), occurred between the Debtor, Shawn Melamad, and Defendant, Shawn Dardashti. The question is whether the property can be considered an "asset" under Civ. Code, § 3439. The encumbrances are greater than the purchase price of $1,150,000, and the $2,150,000 property value alleged by Plaintiff. Defendant argues that even if there were a "transfer," the Property cannot be considered an "asset" under the definition of a fraudulent transfer because there were liens attached to the Property totaling nearly $3,000,000 at the time of the short sale. Plaintiff argues that, at the time of transfer, the three liens totaling $3,000,000 were reduced and replaced with liens totaling $600,000. Plaintiff cites to Defendant's

Supplemental Declaration to support her position. Supp. Decl. of Shawn Dardashti ISO MSJ (the "Dardashti Decl."), ¶3, ¶4. Under Trustee's analysis, the home would be considered an asset, because there was unencumbered equity in the Property following the short sale.

The evidence is that there was nearly $3,000,000 in liens at the time the Property went into escrow. The disagreement over whether the Property is an asset under Civ. Code § 3439 revolves around the *point in time* that the liens were reduced. Defendant argues that the liens were only removed after the transfer happened because the reconveyances to the trust deed holders happened after the transfer to Defendant. Trustee argues that the transfer created substantial equity because of the short sale engineered by Debtor and Defendant.

Although the short sale arrangement and failure to abide by the full terms of the agreement raise questions about Debtors' intent, even if the short sale created equity after the transfer, it does not follow that the property qualifies as an "asset" under Ca. Civ. Code § 3439.01(m).

The applicability of Mehrtash v. Mehrtash, 93 Cal. App. 4th 75 (2001) and similar cases is central to this analysis. In Mehrtash, at the time of the transfer in 1998, the dwelling had recently been purchased by the defendant for $540,000, and the property was subject to first and second trust deed encumbrances totaling $510,000 plus two 1994 judgment liens totaling about $100,000. Mehrtash, 93 Cal. App. 4th at 81. The Mehrtash court concluded that no injury was shown to the plaintiff:

> Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce [the] plaintiff's money judgment, it could not be sold without a court order because it is [the debtor's] dwelling, and could not be sold without a minimum bid equal to all encumbrances and senior liens plus the homestead exemption. Id. In Mehrtash, the court noted that "a creditor has [not]

been injured unless the transfer puts beyond [her] reach property [she] otherwise would be able to subject to the payment of [her] debt.

Mehrtash v. Mehrtash, 93 Cal.App.4th 75, 80 (2001).

In every case cited by the parties and found by this Court applying these principles, the liens on the property at issue were not released in the transfer, but remained on the property after the transfer, ensuring that no value would be realized upon sale of the property. Each of the cases, however, refers to what the value of the property would be at the time of the transfer. Id. at 80 ("Plaintiff produced no evidence that the value of the property could support any net recovery for her in the event the conveyance were set aside."); Fidelity National Title v. Schroeder, 179 Cal.App.4th 834, 845 (Cal. Ct. App. 2009)("Fidelity could not have obtained any net recovery if the transfer were set aside and a forced sale of the property was sought.").

Stadtmueller v. Sarkisian (In re Medina), 619 B.R. 236 (B.A.P. 9th Cir. 2020), aff'd 2021 U.S. App. LEXIS 22529 (9th Cir. July 29, 2021), seems to be the only case that raises any question whether the transfer of a property with no equity could still be considered an unlawful transfer under the actual fraud component of UFTA. Stadtmueller still interpreted Mehrtash to hold that "injury or harm is shown by a transfer that put beyond the creditor's reach assets otherwise available to the creditor." Id. at 247. There must be equity at the time of the transfer.

These cases concentrate on whether the plaintiff is "injured by the transfer" and whether there would be any net recovery "in the event the conveyance were set aside." Fidelity, 179 Cal.App.4th at 841; Mehrtash, 93 Cal.App.4th at 81. "At the time of transfer" references the point in time when the Debtor and Defendant came together to transfer the Property via the short sale. The phrase must be considered to be simultaneous with the completion of the short sale. The SPS Agreement makes the lien

reduction explicitly contingent upon the completion of the short sale, and seven other agreed upon terms. Defendant's Ex. I ISO MSJ, Bates 247-249. The Chase Bank lien does not expressly state, or implicitly imply that the lien reduction is contingent on the sale of the Property. Defendant's Ex. J ISO MSJ, Bates 251-252. Rather it appears to be a negotiated reduction. Id. The Chase Bank reduction, however, of approximately $300,000 is too small on its own to affect the equity calculation and was only arranged in connection with the short sale.

The inquiry of whether any harm has been done is viewed retroactively to the point of transfer, not forward looking of what equity there is after the transfer. Here, if the conveyance were set aside, the senior liens must reattach to the property. Unwinding the transfer eliminates the short sale to which the first and second trust deed lenders agreed. They would have valid complaints if the transfer were undone.

Each of these courts rejected the plaintiff's claims because the creditor setting aside the property at issue could not "subject the property to payment of his or her debt." Fidelity at 845. The Fidelity court specifically rejected as "speculation" the argument that injury could be determined based on future appreciation of the property. Id. "Even assuming the allegedly fraudulent conveyance were set aside and the property were hypothetically available to enforce plaintiff's money judgment, . . . it could not be sold without a minimum bid equal to all encumbrances and senior liens plus the homestead exemption." Mehrtash, 93 Cal.App.4th at 80.

Here, Plaintiff has not presented any other evidence that she would have been able to recover any equity at the time of the transfer. Plaintiff's argument that the equity has increased over time and the home is a current asset is irrelevant. See Fidelity at 845 (concluding that unless the transfer puts beyond reach property that Fidelity could

presently subject to payment of the debt, there is no injury under the UFTA).

While there appears to be no dispute that the Debtor did not comply with the terms of SPS's lien reduction agreement because he negotiated an option to buy the property back and remained living in the house, the violation of the short sale terms does not change the equity at the point of the sale. There is no equity available for Plaintiff to recover, and without any equity, the home is not an asset under Civ. Code § 3439.

Defendant's Motion for Summary Judgment is granted on the § 544 claims. Because the Property is not an asset under UFTA, Plaintiff suffered no injury under UFTA, and the liens on the Property were not reduced until after the transfer of Property. Thus, Defendant is entitled to judgment as a matter of law on the allegations of actual and constructive fraud under 11 U.S.C § 544 and Cal. Civ. Code §§ 3439.04(a)(1) & (a)(2) and 3439.07 and 3439.05.

**Resulting Trust**

Trustee argues that, regardless of the disposition of the fraudulent transfer causes of action, the resulting trust action may go forward. The resulting trust is alleged in the prayer for relief, and the basis for its imposition is not alleged in much detail in the complaint. Trustee argues in the response to the motion that all claims are brought under §544. Opposition, ECF no. 57, 28:20-24.  While the court in Stansfield v. Starkey stated that a resulting trust is a remedy, not a cause of action, 220 Cal. App. 3d 59, 76, 269 Cal. Rptr. 337 (Ct. App. 1990), other California courts have entertained causes of action that seek to impose a resulting trust. See, *e.g.*, Fidelity, at 850 (allowing judgment creditor to maintain resulting trust cause of action). However it is labeled, the alleged facts will be considered here. Concorde Equity II, LLC v. Miller, 732

F.Supp. 2d 990 (N.D. Cal. 2010)(permitting resulting trust allegations as a remedy to proceed).

"A resulting trust arises by operation of law from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest. . . . Such a resulting trust carries out and enforces the inferred intent of the parties." Fid. Nat'l Title Ins. Co. v. Schroeder, 179 Cal. App. 4th 834, 847-48 (2009) (quoting Lloyds Bank California v. Wells Fargo Bank 187 Cal.App.3d 1038, 1042-1043 (1986)).

In Fidelity National Title Ins. Co. v. Schroeder, 179 Cal.App.4th 834 (Cal. Ct. App. 2009), the court found that Fidelity could maintain a resulting trust cause of action. Fidelity alleged that conveyance of property from debtor to co-property owner, Toni, was intended only as a transfer of legal title, which she held as trustee for debtor, and that debtor retained his equitable one-half interest in the property. Id. at 848. The court found that California law provides that a lien attached to *all* interests in real property, including equitable interests. Id. at 849. Fidelity found In re Valente, 360 F.3d 256 (1st Cir. 2004), persuasive in its analysis that, even though the transfer could not be set aside under UFTA, it does not mean that the creditor is without remedy under common law or equity.

> [A]llowing a judgment creditor to maintain a resulting trust cause of action in a case such as this one would merely apply a recognized legal and factual basis for concluding that the debtor actually retained an equitable interest to which a judgment lien may attach. Further, we note that a judgment creditor's use of a resulting trust model as a basis for pursuing assets transferred by a debtor is not altogether novel in California case law.

Fid. Nat'l Title Ins. Co., 179 Cal. App. 4th at 849-50.  Defendant raises both legal and factual objections to Trustee's resulting trust theory.

1

2

*Consideration*

The most significant factual obstacle to Trustee's argument is the evidence

concerning the payment for the property transfer. Courts look primarily to who paid the

consideration for the acquisition of property, in exchange for a beneficial interest when

determining whether a resulting trust exists. Akers v. Mattei (In re Dugger), 2012 Bankr.

LEXIS 2633, at *44-45 (B.A.P. 9th Cir. 2012) (citing In re Torrez, 827 F.2d 1299, 1300

(9th Cir. 1987)). As the court explained in Laing v. Laubach:

> A resulting trust does not arise from any oral agreement between the
> parties, but only as a result of the advancement of at least part of the
> consideration by the one claiming to be the beneficiary. … A natural
> presumption arises that one who furnishes the purchase price intends
> that the purchase is to be for his benefit. … Generally, when the party
> who furnishes the consideration takes legal title in his own name, no
> resulting trust can be imposed in favor of another. … A resulting trust
> cannot be enforced in favor of a person who has paid part of the
> consideration for the transfer of property unless it is possible to clearly
> establish the amount of money contributed by him or the proportion of
> his contribution to the whole purchase price…. One who claims a
> resulting trust in land must establish clearly, convincingly and
> unambiguously, the precise amount or proportion of the consideration
> furnished by him. …If the claimant does not, then the presumption of
> ownership arising from the legal title is not overcome and a resulting
> trust will not be declared.

Laing v. Laubach, 233 Cal. App 2d 511, 516 (Cal. Ct. App. 1965)(citations omitted).

Defendant has filed a declaration explaining the source of the funds he used to

purchase the property. He argues that the evidence is uncontradicted that he is the one

who provided the consideration for the property. The evidence does show that the

Property was paid for by Defendant from his bank account.

Consideration may be in another form than money, including property,

performance of services, or the discharge of debt. Id. at 515. Plaintiff responds that

even if Defendant paid for the Property with his own funds, Defendant still received a

form of consideration in exchange for the Debtor's beneficial interest in the Property.

Opposition, 21:1. Plaintiff argues that the fraudulent scheme itself is evidence of an agreement to have Debtor retain a beneficial interest while Defendant makes money through the fraudulent discharge of mortgages. Id. at 22:25. Trustee also argues that the three loans taken out by Defendant were paid off quickly, by cashier check and wire transfer, such that it cannot be determined whether Defendant paid these off with his own funds. Id. at 21:18.

There is some indication that the $50,000 paid by Debtor, which was claimed to be for a buy-back option, was used by Defendant as a down payment for the Property. Opposition, 23:19.  Defendant responds that any alleged kickbacks do not take away from the fact that Defendant paid for the Property with his own funds. Def. Supp. Brief ISO MSJ, 15:20.

The option to purchase is also contrary to any intent to hold the Property in beneficial interest for the Debtor. Id. at 16:12. Further, the purchase of an option is sufficiently different from the purchase of the underlying Property. Id. at 17:18. Defendant points to Ware v. Quigley, 176 Cal. 694 (1917) where the court held that the plaintiff's option agreement does not create either an express or resulting trust for plaintiff's benefit – it is simply a contract, not a transfer. Ware at 698. The option's duties and conditions were to make lease payments, and Trustee argues that Debtor only made any rent payments after learning about a criminal investigation, disputing the validity of the option agreement.

Trustee also points to subsequent attempts to sell the Property with no disclosure to potential buyers that there was a two-year option and a two-year lease and argues that this shows that there was really no option or lease and it could be sold because Debtors controlled the Property. Opposition, 24:9. Khoshnood, Debtor's aunt, also gave

title with no consideration indicating that that Debtor had actual control over the Property. Id. at 24:1. Defendant responds that he never authorized the pocket listing of the Property. Def. Supp. Brief ISO MSJ, 14:25.

Trustee requests further discovery under F.R. Civ. P. 56(d) before any decision is made. Trustee contends that the three loans paid off via cashier's check and wire transfer may be traced back to Debtor. Opposition, 21:14. In fact, Trustee has not had the opportunity to complete discovery related to the source of funds of the loan payoffs and has not taken the deposition of Defendant or two other significant people. If it is found that the source of funds came from the Debtor, Trustee believes it might be sufficient to show that the Debtor maintained some equitable interest in the Property.

As Trustee is the non-moving party, all material inferences must be made in her favor. Trustee's burden of proof is by clear and convincing evidence that a resulting trust existed. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). While Trustee has not cited to any case where a resulting trust was imposed with such contradictory indications, there are material disputes that could still be resolved through limited additional discovery. Before turning to the question of what inferences can be drawn from the disputed facts, which are material, and whether a continuance is required because discovery has not been completed, there are two legal doctrines which must be examined to determine whether Trustee may pursue the resulting trust – whether the *in pari delicto* doctrine bars recovery and whether Trustee may pursue such remedy on behalf of creditors.

*In pari delicto*

Defendant argues that all causes of action, including the resulting trust, must fail because of debtor's unclean hands. All of the allegations Trustee makes about Debtor's

actions must be imputed to her. The doctrine of *in pari delicto* dictates that when a

participant in illegal, fraudulent, or inequitable conduct seeks to recover from another

participant in that conduct, the parties are deemed *in pari delicto,* and the law will aid

neither, but rather, will leave them where it finds them. Uecker v. Zentil, 244 Cal.App.

4th 789, 792 (2016) (citing Casey v. U.S. Bank Nat. Assn., 127 Cal.App.4th 1138, 1143

(2005)).

   In Peregrine Funding, the court held that if the *in pari delicto* doctrine "would

have barred claims if asserted by a company prior to bankruptcy, the doctrine also bars

them when asserted by the bankruptcy trustee suing on behalf of the company's

bankruptcy estate." Peregrine Funding, Inc. v. Sheppard Mulllin Richter & Hampton,

LLP, 133 Cal.App.4th 658 (2005). Defendant argues that under 11 U.S.C. § 541(a)(1) "a

bankruptcy trustee succeeds to claims held by the debtor as of the commencement of

bankruptcy." Def. Supp. Brief ISO MSJ, 9:12. In actions brought under §541, defenses

to claims asserted by a trustee must be viewed as they existed at the commencement

of bankruptcy, and later events (such as the ouster of a wrongdoer) may not be taken

into account:

> [I]n the context of an unclean hands defense, this means a bankruptcy
> trustee stands in the shoes of the debtor and may not use his status as
> an innocent successor to insulate the debtor from the consequences of
> its wrongdoing. The debtor's unclean conduct—i.e., it's participation in
> the scheme that defrauded investors of millions - must therefore be
> considered without regard to the trustee's succession.

Peregrine Funding, 33 Cal.App. 4th at 680. Defendant also relies on Gottlieb v. Fulcrum

5, Inc. (In re KSL Media), 2016 Bankr. LEXIS 2347 (Bankr. C.D. Cal. 2016).

   Trustee has alleged in great detail that Debtor orchestrated a complex short sale

fraud, using relatives and Defendant's collaboration through various companies and

bank accounts in other's names, and secretly violating the terms of Debtor's agreement

with SPS and Chase. There appears to be no material disagreement that Trustee seeks to prove a scheme by Debtor and Defendant to defraud creditors of any future equity in the Property.[1]

Plaintiff argues that *in pari delicto* is not applicable here because the claims are not brought under §541, but are instead under §544 and a resulting trust theory. (Opposition, 28:23).  Trustee relies on In re Fuzion Technologies Group, Inc., 332 B.R. 225, 232 (Bankr. S.D. Fla. 2005)("[C]ourts have found that the *in pari delicto* defense is inapplicable when a trustee brings an action under sections 544(a), 544(b), or 548, but the defense applies under section 541.") Fuzion has been called into question, see Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.), 364 B.R. 562, 570 (Bankr. D. Del. 2007)(stating Fuzion was clearly overruled by Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145 (11th Cir. 2006)), but the application of *in pari delicto* to bankruptcy trustees has not conclusively been decided in the Ninth Circuit. All Circuits to have considered the issue have determined that the defense of *in pari delicto* may be asserted against a bankruptcy trustee where the underlying state law recognizes the doctrine. See Official Comm. of Unsecured Creditors of Color Tile v. Coopers & Lybrand, LLP, 322 F.3d 147, 158-66 (2d Cir. 2003); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 356-57 (3d Cir. 2001); In re Derivium Capital LLC, 716 F. 3d 355, 366-369(4th Cir. 2013); Terlecky v. Hurd (In re Dublin Sec.), 133 F.3d 377, 381 (6th Cir. 1997); Peterson v. McGladrey & Pullen, L.L.P., 676 F. 3d 594, 598-599 (7th Cir. 2012); Grassmueck v. Am. Shorthorn Ass'n, 402 F.3d 833, 837 (8th Cir. 2005); Sender v. Buchanan (In re Hedged-Inv.

---

[1] The Defendant adamantly denies the bad acts attributed to him by the Trustee where the Trustee has implicated him in the short sale scheme. This dispute need not be resolved as *in pari delicto* is purely a matter of a plaintiff's bad conduct; a defendant's bad conduct is irrelevant. See In re Singh, No. 10-42050-D-7, 2015 Bankr. LEXIS 1440 at *5-6 (Bankr. E.D. Cal., Apr. 22, 2015).

Assocs.), 84 F.3d 1281, 1285 (10th Cir. 1996); Official Comm. Unsecured Creditors of

PSA, Inc. v. Edwards, 437 F. 3d 1145, 1151 (11th Cir. 2006).

Plaintiff Trustee's position on both the *in pari delicto* defense as well as the

authority of a trustee to enforce a resulting trust raise the question of under what

authority Trustee proceeds.  The resulting trust is an "'intention-enforcing trust,' to

distinguish it from . . . a constructive or 'fraud rectifying' trust." Fidelity at 848, citing 13

Witkin, Summary of Cal. Law (10th ed. 2005). A resulting trust is a "creature of equity."

Fidelity at 848, citing Calistoga Civic Club v. City of Calistoga, 143 Cal. App. 3d 111,

117-118 (1983). Under this theory, Dardashti would be holding the Property in trust for

the Debtor, and Debtor's equitable interest is then held by Trustee. Trustee's resulting

trust theory is that the short sale was engineered to allow the Debtor to hold the

beneficial interest while Defendant held legal title. Trustee must be asserting a claim of

the debtors themselves to reclaim the Debtor's beneficial interest. Plaintiff's theory is

basically that she has a present interest in the property because it is being held for the

benefit of the Debtor.  If a present equitable interest exists, it would belong to the

Debtor's estate and would be barred by the *in pari delicto* doctrine.

*Standing in the Shoes of Creditors*

Trustee relies on Valente, 360 F.3d 256, and Fidelity, 179 Cal.App.4th, where

judgment lien creditors sought the imposition of a resulting trust and argues she is

standing in the shoes of Debtor's creditors, rather than those of Debtor. Trustee argues

that one of the unsecured creditors is Mazakoda, Inc., who had a lawsuit against the

Debtor pending in state court at the time the bankruptcy was filed.   Plaintiff seeks to

prosecute Mazakoda's claims pursuant to section 544(b), so the claim is not subject to

the *in pari delicto* defense.

While <u>Valente</u> and <u>Fidelity</u> support the concept of a resulting trust action brought by a creditor, a trustee proceeding in the shoes of a creditor is barred because the action does not fall under the ambit of § 544(b). Trustees do not have standing to prosecute actions against third parties on behalf of creditors. As the Bankruptcy Appellate Panel explained in <u>Hoskins v. Citigroup, Inc. (In re Viola)</u>, 469 B.R. 1, 8 (B.A.P. 9th Cir. 2012), "it is well settled that a bankruptcy trustee has no standing generally to pursue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor] itself." Her only authority to assert creditor's state-law causes of action related to fraudulent conveyances is found in § 544(b). <u>General Elec. Capital Auto Lease v. Broach (In re Lucas Dallas, Inc.)</u>, 185 B.R. 801, 804 (B.A.P. 9th Cir. 1995). Here, the resulting trust theory is being pursued by Trustee precisely because her fraudulent conveyance cause of action is insufficient under § 544(b).

A resulting trust is a "general cause of action" where the trustee lacks standing. <u>Williams v. California 1st Bank</u>, 859 F.2d 664 (9th Cir. 1988)(the trustee does not have standing to assert general causes of action on behalf of an estate). <u>See also</u> <u>Mediators, Inc. v. Manney (In re Mediators, Inc.)</u>, 105 F.3d 822, 824 (2d Cir. 1997)(trustee has no standing to assert aiding and abetting breach of fiduciary duty claims against third parties; only creditors themselves may assert the claim); <u>Smith v. Arthur Andersen Ltd. Liab. P'ship</u>, 421 F.3d 989, 1002 (9th Cir. 2005)([i]t is well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the [debtor himself]").

Whether Trustee is standing in either the shoes of the debtor or the unsecured creditor, the action is barred, and the weighing of the material facts related to the payment of the consideration is not required.

**Conclusion**

The <u>Fidelity</u> court applied the "maxim of jurisprudence that 'for every wrong there is a remedy'" in requiring a resulting trust theory to be explored upon remand. <u>Fidelity</u> at 850. Here, the red flags of fraud identified by Trustee do raise questions about what went on with this short sale.  These factual matters, however, do not control if the statutory basis for the action is missing or Trustee is not the permissible party to remedy a potential wrong. Here, there is no transfer sufficient under Cal. Civ. Code § 3439.01 or 11 U.S.C. § 544 and a resulting trust action is either barred by the *in pari delicto* doctrine or must be brought by an individual creditor, not Trustee.  As the fourth cause of action under § 550 flows from § 544, it too must fail.  For these reasons, the Defendant's motion for summary judgment is granted in full.

Defendant to lodge order in accordance with this ruling.

<div align="center">###</div>

Date: October 5, 2021

Maureen A. Tighe
United States Bankruptcy Judge